# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

SHAUN BERNARD JOHNSON,

      Plaintiff,

v.                                     Civil No. 3:10CV537

STEVEN R. MOORE,

      Defendant.

## MEMORANDUM OPINION

Before the Court is Defendant Steven R. Moore's Motion for Summary Judgment. (Docket No. 26.) This motion has been fully briefed and is ripe for disposition. The Court heard oral argument on the motion, and the parties have filed supplemental briefing. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, and 636(c). For the reasons that follow, the Court will GRANT Moore's Motion for Summary Judgment.[1]

---

[1] Numerous other nondispositive motions are pending in this matter, and the Court resolves these motions as discussed below.

Johnson has filed a Motion to Strike Moore's Answer, alleging that Moore knowingly gave false and misleading responses to paragraphs 14, 15, 16, 17, and 18 of the Complaint. (Docket No. 24.) Johnson requests that the Court sanction Moore by denying him the opportunity to present evidence relating to the allegations asserted in these paragraphs of the Complaint, most of which surround the circumstances of the arrest at issue here. First, many of the paragraphs at issue include multiple allegations, including legal conclusions. Given the structure of the alleging paragraphs, it is not clear that Moore's answers are as evasive as Johnson contends. Second, and in part because of the nature of the allegations, Johnson has failed to establish that Moore gave a knowingly false or misleading response at the time the answer was filed. Third, any potential prejudice has been cured by deposing Moore. Fourth, it appears that most of the disputed matters are not material for summary judgment. At best, then, less drastic evidentiary repercussions or sanctions might be in order were this case to proceed, perhaps including allowing Moore to present admissible evidence of these responses, also permitting Johnson the opportunity to impeach. Thus, the Court will DENY Johnson's Motion to Strike Moore's Answer.

The parties have also filed four motions in limine, as well as a Motion to Take Judicial Notice of Adjudicative Facts and a Motion Objecting to Moore's Proposed Exhibit List. (Docket Nos. 22, 28, 39, 47, 49, 51.) Because the Court will GRANT Moore's Motion for Summary Judgment, the Court will DENY AS MOOT the remaining pending motions.

# I.  Summary of Allegations and Claims Asserted

## A.    Factual Allegations

On July 30, 2010, Johnson filed the instant suit, asserting various claims against Moore, an officer with the City of Richmond Police Department, in his individual capacity arising from a May 31, 2008 traffic stop.  (Docket No. 1.)  The Complaint contends that on May 31, 2008 officers with the City of Richmond Police Department initiated a traffic stop of Johnson's vehicle for loud music allegedly emanating from Johnson's vehicle.  During the traffic stop, Johnson contends that:

> [Moore], without probable cause or reasonable suspicion that criminal activity was afoot, pulled [Johnson] out of his car, and drug [Johnson] to the back of his car, placing him face first into the back of [Johnson's] car with [Moore's] forearm shoved into the back of [Johnson's] neck, forced his feet apart by kicking [Johnson's] feet violently, causing [Johnson] great pain and injury to [Johnson's] body.  [Moore] then placed handcuffs on [Johnson], shoving him into the ground . . . .

(Compl. ¶ 14.)  Moore then issued a summons, charging Johnson with having an open container in his vehicle.  On July 31, 2008, Johnson appeared before the General District Court for the City of Richmond for trial.  That day, Moore allegedly told the Assistant Commonwealth's Attorney for the City of Richmond that he had no independent recollection of the events surrounding Johnson's traffic stop.  As a result, the charges against Johnson were *nolle prossed.*

## B.    Procedural History

Based on these allegations, Johnson raises three counts in his Complaint.  Count I alleges a violation of 42 U.S.C. § 1983,[2] asserting the following:

---

[2]  This statute provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

The intentional acts of the defendant violated the rights of the Shaun [sic] as guaranteed by the Fourth [sic] to the United States Constitution, for which defendant is individually and personally liable.

The wrongful arrest, confinement, and subsequent prosecution caused by the defendant was without justification and was malicious and intentional in order to further his own personal reputation and constitutes a violation of the Shaun's [sic] constitutional rights.

(Compl. ¶¶ 24-25.) While Johnson has failed to clearly articulate which Fourth Amendment violations he asserts under § 1983 in Count I, it appears to the Court, and Johnson confirmed during oral argument, this claim rests on two theories. First, Johnson alleges that Moore violated Johnson's Fourth Amendment[3] right to be free from malicious prosecution by issuing a summons for an open container violation without probable cause. Second, Johnson contends that the duration of the traffic stop was unreasonable under the Fourth Amendment.[4] In Count II, Johnson asserts a freestanding claim for punitive damages, claiming that Moore acted with actual

---

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[3] The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[4] The Court notes that Johnson's Complaint does not assert a freestanding § 1983 claim for excessive force, and indeed, the phrase excessive force does not appear in the Complaint at all. In subsequent briefing and during oral argument, Johnson confirmed that allegations relating to Moore's use of excessive force are offered to demonstrate actual malice and are thus relevant to his malicious prosecution claim and his claim for punitive damages. (*See* Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Mem. Opp'n") 6 ("Moore lacked probable cause to arrest Johnson and Moore's actions, including his use of excessive force against Johnson, demonstrate that he acted with actual malice towards Johnson.").)

malice in causing the wrongful arrest, confinement, and subsequent prosecution, thus warranting punitive damages. Finally, Count III alleges a claim for malicious prosecution predicated on the common law of Virginia.

Moore now contends that he is entitled to summary judgment, asserting the following: (1) entitlement to qualified immunity as to the § 1983 claims; (2) the existence of probable cause bars Johnson's malicious prosecution claim; and, (3) the lack of any evidence showing actual malice bars recovery of punitive damages. In response, Johnson contends that summary judgment is inappropriate because: (1) numerous genuine disputes of material facts exist; (2) Moore is not entitled to qualified immunity; and, (3) the lack of probable cause and the use of excessive force demonstrate actual malice.

On April 20, 2011, the Court heard oral argument on Moore's Motion for Summary Judgment. During this hearing, Johnson raised a new argument not presented in briefing. In briefing Johnson had argued that Moore did not have probable cause to issue the summons for an open container violation under the Richmond City Code because the open beer container at issue was empty. However, during oral argument, Johnson, for the first time, argued that Moore did not have probable cause to issue the summons for an open container violation because the open beer container at issue was located in Johnson's vehicle. The Court ordered the parties to file supplemental briefing to address this new argument.

As discussed below, the Court finds Moore is entitled to qualified immunity as to Johnson's § 1983 claims asserted in Count I. Because this holding is based in part on the finding that Moore had probable cause to issue the summons, Johnson's malicious prosecution claim under Virginia state law must also fail, and Johnson is therefore not entitled to punitive damages.

The Court will thus GRANT summary judgment in favor of Moore and will DISMISS WITH PREJUDICE Johnson's Complaint.

## II. Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. In a qualified immunity case, this usually means adopting the plaintiff's version of the facts to the extent they are not blatantly contradicted by the record. *Scott v. Harris*, 550 U.S. 372, 378-79 (2007). Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving party is entitled to have "'the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). However, the nonmoving party may not rest upon mere allegations or denials, *Anderson*, 477 U.S. at 248, and ultimately, the court must

adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

### III. Undisputed Facts Pertinent to the Resolution of Johnson's Claims

Based on the record before the Court, the Court will summarize below the pertinent undisputed facts relevant to the resolution of Johnson's claims.

During the early morning hours of May 31, 2008, City of Richmond Police Officers Brian Taylor, Roger Harris, and Moore rode together in a marked police cruiser, patrolling the Gilpin Court area of Richmond, Virginia. At approximately 1:30 a.m., the officers initiated a traffic stop on a Cadillac DeVille for playing loud music in violation of a City of Richmond Ordinance, and the driver of the vehicle was identified as Johnson.[5] Taylor and Harris approached the driver's side window and began talking to Johnson.

At the driver's side window, Taylor observed an open container of alcohol in the passenger compartment of the vehicle, and Harris noticed the smell of alcohol emanating from the open window. Moore approached the passenger side of Johnson's vehicle, looked through the front passenger side window, and observed an open beer container on the floorboard of the front passenger seat. Moore could not tell whether the beer container was empty or not, but

---

[5] While Johnson admits that he "was listening to music at the time," he contends that "the music was not loud." (Pl.'s Mem. Opp'n Ex. A, Johnson Aff. ¶ 5.) This conclusory opinion cannot create a dispute of fact. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (stating that affidavits submitted in opposition to summary judgment cannot be conclusory). Regardless, any possible dispute of fact regarding the volume of Johnson's music is immaterial to Johnson's claims because, in the case at bar, Johnson makes clear that his challenge lies with the charge regarding the open container, not the initial stop. The Court confirmed during oral argument that Johnson does not challenge the inception of the traffic stop.

Johnson contends it contained no alcohol. Moore does not remember if he noticed the smell of alcohol emanating from Johnson's vehicle.

Upon observing the open beer container, Taylor asked Johnson to step out of car, and Johnson complied. Moore supervised Johnson, while Taylor and Harris searched Johnson's car.[6] Moore then issued Johnson a summons, charging Johnson with violating Code of the City of Richmond, Virginia § 66-3,[7] and released Johnson. At the time Moore issued the summons, he did not know whether the open beer container actually contained any liquid or whether it was empty. For purposes of summary judgment, the Court must evaluate a stop that lasted

---

[6] Johnson contends that the numerous genuine disputes of material facts in this case should preclude summary judgment. The parties indeed dispute the events leading up to Johnson being placed in handcuffs and whether Johnson sustained any physical injuries as a result of the stop.

Moore contends Johnson initially complied with Taylor's request to step out of the vehicle. Johnson then became argumentative and increasingly belligerent, resulting in Moore eventually placing Johnson in handcuffs. Moore took Johnson to the ground and handcuffed him because Johnson became disruptive and refused to stop trying to walk up to his vehicle. Upon Johnson's release, the officers did not observe any physical injuries, blood, torn clothing, or limping.

Johnson, on the other hand, claims that as he placed his foot out of his vehicle to comply with Taylor's order, Moore grabbed Johnson by his dreadlocks, pulled him to the rear of Johnson's car, and forcibly slammed him against the trunk. Moore handcuffed Johnson and forced him to the ground. Johnson contends he never became disruptive or unruly. As a result of Moore's conduct, Johnson contends he sustained physical pain, bruises, abrasions, and swollen ankles, which resulted in a hospital visit the same morning.

While these facts are clearly disputed, they are not outcome determinative and are thus not material to the disposition of Johnson's § 1983 claims or his state law malicious prosecution claim. *See Anderson,* 477 U.S. at 248. As discussed above, Johnson has not alleged a freestanding excessive force claim pursuant to § 1983. Instead, Johnson asserts these facts to demonstrate actual malice as related to punitive damages and his malicious prosecution claim. Johnson provides this Court with no basis as to why these disputed facts, immaterial to the claims that are indeed before the Court, should preclude summary judgment.

[7] This City Ordinance provides in relevant part: "It shall be unlawful for any person, while in a public park, playground or street, to have in such person's possession an open alcoholic beverage container." Rich. Code § 66-3(a).

approximately two hours, one in which Johnson was handcuffed for approximately forty-five minutes.[8]

On July 31, 2008, Johnson appeared for trial on the open container charge in the City of Richmond General District Court. The Assistant Commonwealth's Attorney for the City of Richmond *nolle prossed* the charge.

## IV. Analysis of Johnson's § 1983 Claims

### A. Applicable Law

Section 1983 provides a private right of action for deprivation of constitutional rights by persons acting under the color of law.

> Section 1983, therefore, "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Hence, to establish liability under Section 1983, a plaintiff must show that the defendant, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.

---

[8] While the parties agree that the traffic stop occurred around 1:30 a.m., the parties dispute the duration of the traffic stop. The officers contend that the entire traffic stop lasted approximately twenty minutes and that Johnson was handcuffed for approximately ten minutes. Johnson, however, states he remained in handcuffs for at least forty-five minutes and the entire traffic stop lasted approximately two hours. Tameka Gale, a witness to the traffic stop, states that Johnson was on the ground in handcuffs for thirty-five to forty-five minutes. However, Gale also testified at her deposition that she took Johnson to the hospital shortly after the traffic stop and that they arrived at the hospital around 2:00 a.m., only thirty minutes after the traffic stop was initiated.

Although the parties dispute these facts, this does not preclude this Court from granting summary judgment as to Count I. In framing the constitutional right allegedly violated, this Court will adopt Johnson's version of the facts regarding the duration of the traffic stop. *See Scott*, 550 U.S. at 378; *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002). The Court will then, as a matter of law, determine whether the constitutional right allegedly violated was clearly established at the time of the challenged conduct. *See Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992) ("[T]he narrow threshold question whether a right allegedly violated was clearly established at the appropriate level of inquiry and at the time of the challenged conduct is always a matter of law for the court, hence is always capable of decision at the summary judgment stage.").

*Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) (*quoting Westmoreland v. Brown*, 883 F. Supp. 67, 71 (E.D. Va. 1995)) (internal citations omitted). In Count I, Johnson alleges two violations of his Fourth Amendment rights: (1) malicious prosecution initiated by the issuance of the summons for an open container violation without probable cause; and, (2) the unreasonable duration of the traffic stop. However, Moore asserts the affirmative defense of qualified immunity as to these § 1983 claims.

The doctrine of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity shields government officials performing discretionary functions from liability for civil damages, insofar as their conduct does not violate clearly established rights of which a reasonable person would have known, in order to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, __, 129 S. Ct. 808, 815 (2009). It is an immunity from suit rather than a mere defense to liability. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It ensures that "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

Whether a police officer is entitled to qualified immunity requires a two-part analysis:

First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at __, 129 S. Ct. at 815-16 (internal citations omitted). While the sequence set forth above is often appropriate, it is not mandatory. *Id.* at __, 129 S.Ct. at 818. Thus, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

In assessing whether the rights allegedly violated were clearly established at the time of the officer's conduct, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would have understood that what he is doing violates that right." *Anderson*, 483 U.S. at 640. Even if no prior decision addresses the precise conduct at issue, a right can be deemed clearly established if "its illegality would have been evident to a reasonable officer based on existing caselaw." *Rogers v. Pendleton*, 249 F.3d 279, 285-86 (4th Cir. 2001). In making this determination, the Court "may rely upon cases of controlling authority in the jurisdiction in question, or a 'consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Id.* at 287 (*quoting Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

**B. Johnson's § 1983 Claim Based on Malicious Prosecution**

Johnson first argues that Moore violated Johnson's Fourth Amendment right to be free from malicious prosecution. The United States Court of Appeals for the Fourth Circuit has acknowledged that "[w]hile it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure." *Snider v. Lee*, 584 F.3d 193, 199 (4th Cir. 2009) (internal citations omitted). In other words, "[t]o state such a claim, a plaintiff must allege (1) that the defendant seized the plaintiff pursuant to legal process that was not supported by probable cause and (2) that the underlying criminal proceedings have terminated in the plaintiff's favor." *Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 625 (E.D. Va. 2010) (*citing Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005)).

To support his Fourth Amendment malicious prosecution claim, Johnson contends that Moore issued a summons for an open container violation without probable cause and that the summons was eventually *nolle prossed.* The summons at issue charged Johnson with violating a city ordinance making it "unlawful for any person, while in a public park, playground or street, to have in such person's possession an open alcoholic beverage container." Rich. Code § 66-3(a). Johnson argues that Moore did not have probable cause to issue this summons because: (1) the ordinance must be inapplicable to open, but empty, alcoholic beverage containers; and, (2) the ordinance does not apply to open alcoholic beverage containers located in a vehicle on a public street.[9]

---

[9] In the initial briefing, Johnson did not challenge the ordinance's application to possession of an open alcoholic beverage container in a vehicle on a public street. Because Johnson raised this issue for the first time during oral argument, the Court ordered supplemental briefing as to this issue.

Given this backdrop, the Court must determine whether Moore had probable cause to issue a summons under Richmond City Code § 66-3 based on the open but empty beer container located in Johnson's vehicle on a public street. If Moore did not have probable cause, the Court must then determine whether, at the time of Moore's conduct on May 31, 2008, it was clearly established that a police officer may not issue a summons under Richmond City Code § 66-3 for possession of an open but empty beer container in a vehicle located on a public street. The Court concludes that Johnson fails both prongs of this two-part analysis, and thus Moore is entitled to qualified immunity.

### 1. **Probable Cause**

#### a. **Applicable Law**

Probable cause arises when sufficient facts and circumstances exist to warrant a prudent person to entertain a reasonable belief that the suspect was committing an offense. *See Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Probable cause to effect a custodial arrest can rest on trustworthy facts and information available to an officer, such that a prudent person would believe a law had been violated. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). This is guided by two factors: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett*, 973 F.2d at 314. Probable cause to arrest can exist even when the law believed to have been violated is a misdemeanor or other minor infraction, so long as such offense was committed in the arresting officer's presence. *See, e.g.*, *Virginia v. Moore*, 553 U.S. 164, 167, 176 (2008) (finding arrest for driving on suspended license did not violate Fourth Amendment, even though state law required issuance of summons and did not authorize arrest); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an

12

officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Further, Virginia law permits a police officer to "arrest, without a warrant, any person who commits any crime in the presence of the officer." Va. Code § 19.2-81.

Here, the officers initiated a traffic stop on Johnson's vehicle for the loud music allegedly emanating from his car in violation of a local ordinance. This violation provided "sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008). Upon approaching Johnson's vehicle, the officers, including Moore, quickly observed the open beer container in Johnson's vehicle in plain view.

> **b.    Under the Facts of this Case, the Fact that the Open Beer Container Was Empty Does Not Preclude a Finding of Probable Cause**

Johnson does not dispute that an open beer container was found on the front passenger floorboard of his vehicle located in the Gilpin Court area of Richmond. However, because the beer container in Johnson's vehicle was empty and Moore failed to determine whether it contained any alcohol, Johnson contends Moore had no probable cause to issue the summons.[10] Nothing in the unambiguous, plain meaning of the statute suggests to this Court that Richmond City Code § 66-3 is limited in its application to only full or partially full open alcoholic beverage containers.

_____

[10] Because it views the facts favorably to Johnson, the Court does not presume Moore knew that Harris smelled alcohol.

The ordinance at issue makes it unlawful for any person to possess an open alcoholic beverage container in public. Rich. Code § 66-3. The Richmond City Code does not define the phrase "open alcoholic beverage container." Further, no restriction exists within the Richmond City Code requiring or even suggesting the open alcoholic beverage container cannot be empty. *Compare* Rich. Code § 66-3(a) ("It shall be unlawful for any person, while in a public park, playground or street, to have in such person's possession an open alcoholic beverage container."), *with* Charlottesville City Code § 17-37(a) ("It shall be unlawful for any person to possess an open or opened container, can, cup, glass or bottle, *containing an alcoholic beverage* in any city park or playground or in any public street . . . ." (emphasis added)). "When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." *Hubbard v. Henrico Ltd. P'ship*, 497 S.E.2d 335, 338 (Va. 1998). In choosing language that differed from the Charlottesville City Code, or from that used in the Virginia Code, the Richmond City Council clearly allowed this section to apply to persons possessing an open alcoholic beverage container in public places, regardless of whether the container was full or partially full or whether the contents had already been consumed, because the phrase "containing an alcoholic beverage" that appears in other codes is omitted.[11]

---

[11] For the first time in supplemental briefing, Johnson argues absurdities that might result if the Court finds that probable cause can exist despite the fact that the open alcoholic beverage container was empty. None of the hypothetical scenarios raised by Johnson, however, are currently before the Court. This Court, applying the plain language of the Richmond City Code, must determine whether probable cause existed under the Richmond City Code when Moore saw an empty beer bottle on Johnson's floor board. The Court does not evaluate whether a prudent person would believe that carrying empty beer bottles in a recycling bin to the curb might undergird a finding of probable cause. Those facts and circumstances would present a different analysis.

14

The Court also notes that § 66-3 is broader than Richmond City Code § 66-4, which prohibits persons from drinking alcoholic beverages or offering alcoholic beverages to others in a public place.[12] While § 66-4 implicitly requires the presence of an alcoholic liquid, the language of § 66-3 encompasses a broader range of conduct and prohibits the mere possession of an open alcoholic beverage container.

Johnson nonetheless argues, applying the Code of Virginia's definition of "open container," that the phrase "open alcoholic beverage container" only encompasses vessels "containing an alcoholic beverage, except the originally sealed manufacturer's container." Va. Code § 18.2-323.1. Johnson, however, provides no reason or explanation as to why undefined terms in the Richmond City Code § 66-3 must be accorded the definitions provided in the Code of Virginia. The plain language of Richmond City Code differs from the Virginia Code, and nothing on this record suggests why it should not be given its own–in this case potentially broader–interpretation. Indeed, in other chapters, the Richmond City Code specifically incorporates definitions from the Code of Virginia. *See, e.g.*, Rich. Code § 50-192 ("Terms defined in Code of Virginia, § 10.1-560 and the Virginia Erosion and Sediment Control Regulations (4VAC50-30) have those meanings when used in this article."). In the absence of specific legislative direction, any interpretative overlay as to the meaning of the statute should derive first from the legislative branch, not judicial interpretation.

---

[12] This section of the Richmond City Code provides in relevant part: "It shall be unlawful for any person to take a drink of any alcoholic beverage or to offer a drink thereof to another, whether accepted or not, at or in any public place." Rich. Code § 66-4(b).

Based on the undisputed facts and the plain language of the Richmond City Code, the

Court finds that Moore had probable cause to issue a summons for a violation of Richmond City

Code § 66-3, even if the open beer container were empty.

> c. **Under the Facts of this Case, the Fact that the Open Beer Container Was Located in a Vehicle on a Public Street Does Not Preclude a Finding of Probable Cause**

In supplemental briefing, Johnson argues that possessing an open alcoholic beverage

container *within one's vehicle* located on a public street cannot give rise to a violation of

Richmond City Code § 66-3. While recognizing that the call might be closer than that with

regard to the "open alcoholic beverage container," given the low threshold that probable cause

entails, the Court finds that Moore had probable cause to issue a summons under Richmond City

Code § 66-3 even though Johnson possessed the open container within his vehicle located on a

public street.

Section 66-3 prohibits any person from possessing an open alcoholic beverage container,

"while in a public park, playground or street." Rich. Code § 66-3(a). The language of the

ordinance is silent as to whether a bottle within a car on the street can qualify. The Court already

has noted this code section offers broader application than other Virginia laws, which suggests

that the Court could infer the Council did not seek a narrow application. Even absent that

presumption, however, given the circumstances Moore faced, this Court finds that the facts and

circumstances here could warrant a prudent person to entertain a reasonable belief that the fact

that the car was on the street sufficed as a violation. The Court makes this finding in the first

instance because Johnson has failed to cite to, nor has this Court found, a section of the

Richmond City Code that prohibits the possession of an open alcoholic beverage container in a

16

vehicle, or on a city bus, which–if that separate code section did exist–would suggest precluding the same type of conduct from being encompassed by § 66-3. Instead, it seems reasonable an officer would presume the Council meant to prohibit open containers in a vehicle via § 66-3 if no separate city code does so.

In opposition, Johnson contends that a person enjoys a reasonable expectation of privacy inside his or her vehicle, and thus, the ordinance cannot be interpreted to apply to the possession of an open container of alcohol in a vehicle. However, this argument cannot countermand a reasonable belief that § 66-3 would support probable cause under these facts and circumstances. The fact that a person has a reasonable expectation of privacy in a place or thing does not mean that the government cannot proscribe certain conduct. It simply means that the government cannot engage in an unreasonable search under the Fourth Amendment of that place or thing. Thus, even though a person might have a reasonable expectation of privacy in a backpack he or she carries, possessing an open alcoholic beverage container in that backpack while standing in a public place or street might result in a violation of Richmond City Code § 66-3, so long as the open alcoholic beverage container was discovered pursuant to a lawful search. Johnson does not dispute the initial basis for the stop, nor does he dispute that his vehicle was located on a public street in the Gilpin Court area of Richmond.

Thus, considering the language of § 66-3 and the fact that no other Richmond City Code provision appears to address an open alcoholic container in a vehicle, the facts and circumstances of this case were sufficient to warrant a reasonably prudent person to believe that Johnson had committed a violation of Richmond City Code § 66-3, even though the open beer container was located inside Johnson's vehicle, which was itself on a public street. Johnson has failed to

17

establish his Fourth Amendment malicious prosecution claim because Moore had probable cause to arrest Johnson and issue the summons.

## 2. Clearly Established

Johnson also cannot show that the right allegedly violated was clearly established at the time of Moore's conduct. In making this determination, the Court must define the right at issue in a more particularized fashion. *Anderson*, 483 U.S. at 640. The Court must thus determine whether it was clearly established at the time of Moore's conduct that an open, but empty, alcoholic beverage container found in a vehicle in a public street could not give rise to probable cause to believe that a violation of Richmond City Code § 66-3 had occurred. Even if this Court were to find that Moore actually lacked probable cause, the alleged unlawful conduct in this case is at best a "gray area." *Maciariello*, 973 F.2d at 298. Because the contours of the right at issue were not sufficiently clear such that a reasonable officer in Moore's position would have understood that what he was doing violated that right, Moore is entitled to qualified immunity regardless of whether or not he had probable cause to issue the summons.

### a. It Is Not Clearly Established that an Open, but Empty Alcoholic Beverage Container Precludes Probable Cause Under Richmond City Code § 66-3

As discussed above, the Richmond City Code does not restrict the phrase open alcoholic beverage container only to full or partially full containers. If the Richmond City Council did not intend this section to apply to open, but empty, alcoholic beverage containers, they did not clearly establish that intention.[13]

---

[13] Johnson also does not address, nor does the statute or case law clearly establish, whether alcohol residue in an otherwise empty beer bottle would "contain" alcohol for purposes of the codes with the more restrictive language.

18

Similarly, to the extent that the Richmond City Council might have intended the phrase "open alcoholic beverage container" to carry the same definition as "open container" under the Code of Virginia, they have failed to clearly establish that intention and could have easily done so. *See, e.g.*, Rich. Code § 50-192 ("Terms defined in Code of Virginia, § 10.1-560 and the Virginia Erosion and Sediment Control Regulations (4VAC50-30) have those meanings when used in this article.").

Further, Johnson fails to cite a single case suggesting that his interpretation of the Richmond City Code has been applied or should be applied in the manner he urges here.[14] Nor has this Court found any case law suggesting that this code section does not pertain to empty open alcoholic beverage containers. *Cf. Guidry v. Boyd*, No. 06C1600, 2007 WL 2317174, at *2, 9 (N.D. Ill. July 17, 2007) (finding that two empty beer bottles gave rise to probable cause to arrest for violation of an Illinois statute prohibiting persons from possessing alcoholic liquor in a vehicle on a highway except in the original sealed container). Given the absence of controlling cases that could inform Moore's decision, and differing language between the Richmond City Code, which refers to an "open alcoholic beverage container," and the Virginia Code, which refers to open vessels "containing an alcoholic beverage," this Court cannot find Moore violated clearly established law when issuing the summons to Johnson even presuming the bottle was open, but empty.

---

[14] Johnson cites only one case, *Hayes v. Commonwealth*, No. 1210-99-3, 2000 WL 389669 (Va. Ct. App. Apr. 18, 2000), to support his argument that probable cause cannot exist where the open beer container is empty. While the facts before the *Hayes* court included a bottle containing a liquid identified as beer, the opinion does not in any manner suggest that the absence of the alcoholic liquid would preclude a finding of probable cause relating to a violation of a similar Danville city ordinance. *Id.* at *1-2. In *Hayes*, the court affirmed the denial of a motion to suppress when it found the encounter in a private yard to be consensual.

**b.    It Is Not Clearly Established that an Open Alcoholic Beverage Container Located in a Vehicle on a Public Street Precludes Probable Cause Under Richmond City Code § 66-3**

Despite the opportunity to address the "street" argument in supplemental briefing, Johnson fails to cite to a single case, nor has this Court found any case law, suggesting that Richmond City Code § 66-3 does not prohibit the possession of an open alcoholic beverage container within a vehicle located in a public place. *Cf. Price v. Commonwealth*, No. 1628-99-3, 2000 WL 1486648, at *1 n.1 (Va. Ct. App. Oct. 10, 2000) (affirming the denial of a motion to suppress while declining to decide "whether possession of an open container of beer by a passenger in the back seat of a car on a public street" violated a similar city ordinance because the issue was not raised on appeal).

Moreover, the existing case law suggests that Richmond City Code § 66-3 might properly encompass the conduct at issue. *See United States v. Johnston*, No. 3:08cr42, 2009 WL 1545830 (W.D. Va. June 3, 2009). Under the facts of *Johnston*, a police officer approached the defendant who was sitting in the driver's seat of a vehicle parked at a public housing complex, and during a consensual conversation, the police officer observed two opened containers of alcohol in the center console of the defendant's vehicle. *Id.* at *1. This consensual encounter then turned into a seizure, eventually resulting in the discovery of controlled substances and a firearm. *Id.* at *2. The defendant challenged his drug and firearm charges through a motion to suppress, arguing that the evidence must be suppressed as fruit of his illegal seizure. *Id.* Citing Charlottesville City Code § 17-37, which prohibited the possession of an open container of alcohol in any public park, playground, or street, the Court found the seizure lawful, stating that the officer had the authority to issue the defendant a citation for a violation of the city code. *Id.* at *3. While the

first part of the Charlottesville code differs from Richmond's, the latter part discussing possession in a public park, playground, or street is similar. In *Johnston*, the court implicitly held that the container *in the car* was "in the street" for purposes of the Charlottesville City Code.

Thus, given the case law before the Court and the language of Richmond City Code § 66-3, this Court cannot find Moore violated a clearly established right by issuing the summons based on Johnson's possession of an open alcoholic beverage container within his vehicle located on a public street.

In sum, Moore is entitled to qualified immunity as to the Fourth Amendment malicious prosecution claim because Johnson has failed to establish the violation of a constitutional right and has failed to demonstrate that the constitutional right at issue was clearly established at the time of the alleged violation.

### C. Johnson's § 1983 Claim Based on the Unreasonable Duration of the Traffic Stop

Next, Johnson alleges that the duration of the traffic stop was unreasonable under the Fourth Amendment: "The actions Moore took after the minimal time required to issue Johnson a citation for the loud music are without constitutional justification." (Pl.'s Mem. Opp'n 8-9.) This argument rests on the theory that observation of an open but empty beer container within Johnson's vehicle cannot give rise to probable cause or reasonable suspicion that would sustain a two-hour long detention or custodial arrest. In analyzing this claim, the Court assesses first whether the right allegedly violated was clearly established at the time of the officer's conduct.

As already determined above, Moore had probable cause to issue a summons for a violation of Richmond City Code § 66-3. *See supra* Part IV.B.1. Therefore, given the

21

procedural posture and the factual presumptions applicable here, the Court must determine whether, at the time of Moore's conduct on May 31, 2008, it was clearly established that a police officer may not arrest or seize a person for what this Court must presume was two hours based on probable cause to believe that a misdemeanor violation of Richmond City Code § 66-3 had occurred. The Court cannot find, even presuming a two-hour detention period, that such a time period violated Johnson's rights. Indeed, during oral argument, counsel for Johnson conceded that if this Court found probable cause, his duration argument would fail.

The Court finds that a reasonable Virginia police officer in Moore's position would have believed, based on the open beer container located in Johnson's vehicle, that Johnson had committed a misdemeanor offense in his presence and would have believed that he had probable cause to detain Johnson or place him under custodial arrest. *See Johnston*, 2009 WL 1545830, at *3; *see also Moore*, 553 U.S. at 176; *Atwater*, 532 U.S. at 354; *United States v. Wiggins*, 240 F. App'x 594, 596 (4th Cir. 2007) (finding arrest lawful for violation of North Carolina law making it a misdemeanor to transport liquor in the passenger areas of a vehicle unless contained in manufacturer's unopened original container).

As to duration, Johnson's arguments that Moore impermissibly extended the stop beyond the scope permitted for articulable suspicion do not pertain, because Moore's conduct extended beyond suspicion to probable cause to arrest Johnson. When an officer has probable cause, it is unnecessary for the Court to perform a *Terry*-stop analysis to determine whether the scope and duration of the stop was reasonable. *United States v. Childs*, 277 F.3d 947, 953 (7th Cir. 2002) ("[A]lthough traffic stops usually proceed like *Terry* stops, the Constitution does not require this equation. Probable cause makes all the difference–and . . . traffic stops supported by probable

cause are arrests, with all the implications that follow from probable cause to believe that an offense has been committed."); *see also Berkemer v. McCarty*, 468 U.S. 420, 439 n.29 (1984) ("We of course do not suggest that a traffic stop supported by probable cause may not exceed the bounds set by the Fourth Amendment on the scope of a *Terry* stop."); *United States v. Lewis*, No. 3:09cr93, 2010 WL 2629754, at *2 n.2 (W.D.N.C. June 25, 2010) (finding the duration of the traffic stop *after* the police had probable cause to arrest irrelevant to the analysis of whether defendant was detained for an unreasonable amount of time for purposes of a routine traffic stop based on reasonable articulable suspicion); *United States v. Pettiford*, 295 F. Supp. 2d 552, 559 (D. Md. 2003) (distinguishing between detention during a *Terry* stop and detention pursuant to a warrantless arrest based on probable cause).

Here, even under the proper analysis based on probable cause, Johnson fails to cite a single case supporting his primary contention that the presumptive two-hour period during a custodial arrest violates clearly established law.[15] Indeed, case law establishes otherwise. The Supreme Court of the United States has instructed that "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest." *Gerstein*, 420 U.S. at 113-14. To justify an extended restraint on liberty following a warrantless arrest, however, the Fourth Amendment requires a judicial determination of probable cause. *Id.* at 114. Generally, a judicial probable cause determination is prompt for Fourth Amendment purposes if it occurs

_____

[15] Johnson repeatedly alleges harsh conduct by Moore during the arrest, but counsel confirmed those allegations are meant only to show actual malice. That conduct is never placed before the Court to show it inappropriately delayed the arrest, nor can the Court draw any such inference from this record.

within forty-eight hours after the warrantless arrest or detention. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

Here, even presuming the facts alleged in the light most favorable to Johnson, Moore detained Johnson for two hours. During this time, other officers performed a search of Johnson's vehicle, and once the search was completed, Moore issued a summons to Johnson and then released Johnson. Johnson has failed to show that this presumptive two-hour period of detention was a violation of his clearly established constitutional rights. Accordingly, the Court finds that Moore is entitled to qualified immunity.

For these reasons, the Court will GRANT summary judgment on Johnson's § 1983 claims asserted in Count I based on qualified immunity.

### V. Johnson's State Law Malicious Prosecution Claim

In Count III, Johnson alleges a claim for malicious prosecution predicated on the common law of Virginia. To maintain an action under Virginia law for malicious prosecution arising from a criminal case, the plaintiff must prove: "(1) that the prosecution was instituted by, or with the cooperation of, the defendant; (2) that the prosecution was terminated in a manner not unfavorable to the plaintiff; (3) that it was without probable cause; and (4) that it was malicious." *Lee v. Southland Corp.*, 244 S.E.2d 756, 758 (Va. 1978). "Probable cause in malicious prosecution actions is defined as 'knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected.'" *Id.* at 758-59 (*quoting Va. R. & P. Co. v. Klaff*, 96 S.E. 244, 246 (Va. 1918)).

As already determined above based on the undisputed facts before the Court, Moore had probable cause to issue a summons for a violation of Richmond City Code § 66-3. *See supra* Part IV.B.1. Because Johnson, based on the undisputed facts, cannot demonstrate that the prosecution against him was initiated without probable cause, a necessary element of his malicious prosecution claim under Virginia law, Moore is entitled to summary judgment as a matter of law. The Court will DISMISS WITH PREJUDICE Count III.

## VI. Johnson's Claim for Punitive Damages

In Count II, Johnson appears to assert a freestanding claim for punitive damages, claiming that Moore acted with actual malice in causing the wrongful arrest, confinement, and subsequent prosecution of Johnson. "At law, there is no independent, free-standing claim for punitive damages. Rather, punitive damages are an element of damages available if certain claims are proved." *Saleh v. Va. State Univ.*, No. 3:97-CV-460, 1999 WL 34798179, at *6 n.4 (E.D. Va. Feb. 25, 1999). Because the Court will dismiss with prejudice Counts I and III, the Court will also DISMISS WITH PREJUDICE Johnson's claim for punitive damages asserted in Count II.

## VII. Conclusion

For the foregoing reasons, the Court will GRANT Moore's Motion for Summary Judgment. (Docket No. 26.) Because the alleged genuine issues of material fact "either are not genuine issues or are not material facts," *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985), and it appears from the undisputed facts that Johnson has failed to demonstrate a constitutional violation and further that any alleged constitutional violation was not clearly established, the Court finds that Moore is entitled to summary judgment as to Count I based on the defense of

qualified immunity. The Court also will enter summary judgment in Moore's favor as to Counts II and III. Accordingly, the Court will DISMISS WITH PREJUDICE Johnson's Complaint.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 4-29-11